**WALTER v. HEIL CO.**

No. 4411.

District Court, E. D. New York.

May 14, 1930.

Redding, Greeley, O'Shea & Campbell, of New York City (Worthington Campbell, of New York City, of counsel), for plaintiff.

Davis & Davis, of New York City (Arthur L. Morsell, of Milwaukee, Wis., of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which the infringement of letters patent No. 1,652,262, granted to M. Walter December 13, 1927, for a dumping mechanism for semitrailers, is involved. The usual defenses of invalidity and noninfringement are urged.

The invention has for its object the construction of means whereby semitrailers which are hauled by tractors may be readily dumped. Since to equip each semitrailer with a dumping mechanism would be expensive, the inventor adopted the simple expedient of mounting the hoisting mechanism on the tractor, thus avoiding, as is stated in the specification, duplication of expense. A second object of the invention is to eliminate "the provision of flexible connections and particularly hydraulic connections between the tractor and semitrailer."

To carry out the conceived invention, the inventor provides a dumping mechanism of "any known type and operated by any available source of power" on the frame of the tractor. The patent illustrates a mechanically operated dumping mechanism consisting of an operating gear $h$ driven through a shaft $H$ which may derive its power from the prime mover for the tractor. The gear $h$ through links $H^1$ and $h^2$ is connected with the arms of an A–frame $a$, which is pivoted as at $b^3$ on brackets $b^1$, $b^2$, secured to the chassis.

Thus rotation of the gear will elevate and lower the A–frame as desired. At the free end of the A–frame, a link $f^1$ is provided hinged thereon, and in turn it is also pivotally secured to the lower side of the fifth wheel $f$. The pivot $f^2$ is substantially at right angles to the hinged line of the link $f^1$.

As an important part of the means for carrying out the invention, the specification discloses that the fifth wheel $f$ is detachably secured to the chassis of the tractor. This is made possible by the saddle pieces $t^1$, $t^2$, positioned on the side frame members of the tractor. So far as the semitrailer is concerned, the only provision set forth in the patent is that it may be engaged with the fifth wheel "in any suitable or known manner so that its forward end will engage the tractor in such wise as to permit the trailer to be drawn in travel and the tractor to change direction with respect to it whether going forward or backward. Any fifth wheel connection for this purpose may be used."

The mechanism described thus discloses a fifth wheel swivally engaged with the hoisting mechanism, and makes possible self-alignment during the dumping operation at whatever the angular position of the semitrailer to the tractor may be.

It is thus seen that the tilting of the semitrailer is effective without any special provision thereon for that purpose, except that it have a fifth wheel connection.

. Claims 2 and 3 are the only claims involved. They read:

"2. In combination with a tractor and semi-trailer, dumping mechanism mounted wholly on the tractor, a fifth wheel connection between the tractor and semi-trailer, one element of which is carried on the tractor and connected with the dumping mechanism and the co-operating element of which is carried on the trailer, and means between the fifth wheel connection and the dumping mechanism affording capacity for universal movement of the fifth wheel during dumping."

"3. In combination with a tractor and semi-trailer, dumping mechanism carried wholly on the tractor, a fifth wheel universally connected to the dumping mechanism and a complementary connection for the fifth wheel on the trailer, and means on the tractor for engaging the fifth wheel and holding it against universal movement when in lowered position."

With respect to the interpretation of the patent, the defendant takes the position that it relates solely to a dumping mechanism as contrasted with a hoisting mechanism; that it makes no disclosure of a construction whereby the tractor and trailer could be connected or disconnected, and that when disconnected no suitable supporting mechanism is shown so as to permit the manual unloading of the contents of the trailer body; that the construction disclosed and claimed is incapable of being used as a connectible and disconnectible trailer; that the claims are invalid as setting forth as a positive element certain features not described; and that the claims are invalid because of anticipation.

Among the foregoing objections, the defendant forcibly throughout the trial endeavored to distinguish between a dumping mechanism and a hoisting mechanism, the obvious reason for such attempted differentiation lying in the fact that in contending for noninfringement it was urged that the defendant's device as installed in the Borden tractor semitrailer, was essentially a hoisting means and not a dumping means. I can find no logical ground for the distinction asserted. The dumping mechanism described by the patentee could not perform its function without tilting the semitrailer. In so doing, obviously it must hoist the semitrailer. Indeed, the witness Heil, the president of the defendant, after having contended that a "hydraulic hoist is a hydraulic hoist to raise a dumping body or a trailer or a semi-trailer from the tractor," frankly admitted that a "dumping mechanism" is the same hydraulic hoist. It is the function performed by the means and not the name that the inventor adventitiously gives them, that is controlling in the interpretation of a patent specification.

The second contention made, that the patented construction fails to disclose how the tractor and trailer could be connected or disconnected, is in part true. It is true that there are no means indicated as to how the trailer may be disconnected from the tractor; it is not true in respect to how the tractor and trailer are connected, for the specification says that the semitrailer may be engaged with the fifth wheel "in any suitable or known manner so that its forward end will engage the tractor in such wise as to permit the trailer to be drawn in travel and the tractor to change direction with respect to it whether going forward or backward. Any fifth wheel connection for this purpose may be used."

The record shows that fifth wheels were old in the art, and that a common well-known method of engagement of the upper part of the fifth wheel with the lower part was by means of a king-pin. The patentee therefore availed himself in his specification of the king-pin fifth wheel connection or any other connection known at the time. That he failed specifically to point out means for disconnecting the tractor and trailer is of no importance, since that element does not enter into the claims.

This view likewise disposes of the next objection that the Walter patent fails to disclose a connectible and disconnectible trailer.

We come now to the prior art relied upon by the defendant to invalidate the claims.

Although a great number of prior art were offered in evidence, those now relied on are to Beadle, No. 846,772; Greene, No. 974,877; Byron, No. 1,175,046; Peets, No. 1,260,027; Sanderson 1,332,308; Edwards, No. 1,482,510; and Mayer, No. 1,595,902.

Of these, the patent to Beadle is the most important and deserves the fullest consideration. The Beadle invention relates to a construction in which two frames are articulated together by a perch-pin. This perch-pin takes the place of the ordinary perch-pin of one frame, and is situated over the rear axle of the other frame. One frame, the front frame, carries the motor; the vehicle body being carried by the rear frame. The inventor further states that in some constructions of this kind the articulation between the frames has been a universal joint. This perch-pin is adjustable in height, carries at

the top some form of universal joint, and a turn-table or turn-plate is mounted on the pin. When the fore carriage of the vehicle has been removed, the plate that normally turns on the turn-plate of the fore carriage is attached to the universally jointed turn-plate carried by the tractor frame. The inventor says that, when the tractor is to be removed from the wagon or carriage while the latter is still loaded, trestle-legs or the like may be hinged to the wagon, as, for example, in the Borden device in suit. The adjustment of the universal joint enables the tractor to haul any one of a number of vehicles of different build, but the inventor adds (and this is important in order that the Beadle disclosure can be properly interpreted): "When the tractor is to be used for hauling any one of a number of vehicles of the same build, it is not essential that the height of the universal joint above the tractor-frame should be adjustable."

Comparing the construction with the patent in suit, one finds that the lower member $b$ of the fifth wheel or plate in the Beadle device is carried on the hoist device and not on the tractor frame as in the Walter patent, when the lower member of the fifth wheel in that device is lowered. In the Beadle construction the lower element of the fifth wheel is supported really at all times on the screws, so that these screws, and therefore the plate, are never freed either from the static load of the semitrailer or the traction forces, whereas Walter purposed to carry the static load on the tractor by carrying the lower fifth wheel element directly on the tractor or frame. It thus appears that the hoisting mechanism in the Walter device is freed from the forces to which the lower fifth wheel is subjected, and lateral stability is afforded the semitrailer despite the universal connection between the fifth wheel and the hoist. This is apparently of considerable importance, because, if in the Walter device the lower member of the fifth wheel element was not borne by the tractor in traveling position, there would be loss of lateral stability between the hoist and the fifth wheel, due to the presence of the universal connection. In Beadle, on the other hand, the universal connection is operative at all times because the lower member of the fifth wheel is carried in both traveling position as well as otherwise on the hoist and not on the tractor.

Mayer patent, No. 1,595,902, issued August 10, 1926, for a trailer hoist and coupler, is also regarded by the defendant as of great importance. It seems to me that as an anticipation it fails, because the lower member of the fifth wheel $14$ is fixedly mounted on the tractor frame $2$. In other words, it remains stationary. Nor is the fifth wheel in the Mayer patent connected with the hoisting means within the teaching of Walter.

Greene patent, No. 974,877, issued November 8, 1910, is for an improvement in wagons provided with fifth wheels. The patent shows a tractor and trailer which are detachably connected. It is urged that the lower fifth wheel element is capable of being rocked in one direction on the trunnions $23$ and in the opposite direction on the trunnions $28$; but, whatever suggestion there is of a universal joint, there still remains much of the Walter invention to account for. Apparently there is no showing as to how the lower fifth wheel $30$ is to be hoisted.

Byron patent No. 1,175,046, issued March 14, 1916, is for an improvement in trailers. The frame $E^1$ of the tractor is provided with a socket portion $F$ for receiving a ball $G$ connected to the bottom of the trailer frame $C$. The socket $F$ is composed of a stationary portion $H$ mounted upon a crossbar $I$ rigidly secured to the frame $E^1$. The forward portion of the socket is formed by means of jaws $J$ and $K$ pivoted at $L$ to the crossbar $I$.

There is no hoisting mechanism on the tractor, as I read the patent, for raising the lower member of the fifth wheel or for elevating the trailer, so that, even assuming that the ball and socket arrangement are the fullest equivalent of a fifth wheel combination, as may be admitted, this patent is lacking, for the reasons indicated, in essential features of the Walter disclosure.

Peets patent, No. 1,260,027, issued March 19, 1918, covers a pivotal connection for motor vehicles. It is sufficient to say of this patent that it has a fifth wheel connection which acts as such only when the trailer is down. The lower member $18$ of the fifth wheel is not elevated but remains stationary.

Sanderson patent, No. 1,332,308, issued March 2, 1920, covers a hoisting mechanism for dumping vehicles. Apparently the patent is cited only for the reason that it shows, as it is contended, upwardly extending lugs from the chassis (not indicated by reference character in the patent). Between these lugs the frame $5$ is adapted to be received, and thus the dumping body is held against lateral swinging. If the elements of the claim in suit of the Walter patent failed to disclose co-operating means, this reference for the particular purpose might be urged; otherwise it is insignificant.

Edwards patent, No. 1,482,510, issued February 5, 1924, relates to a tipping body for automobiles. It shows a device by which the tipping body *n* of the vehicle can be dumped rearwardly or turned about pivotal points so as to tip the load at either side of the vehicle when required; but this is not the combination of the Walter patent.

There remains the patent to Blum, No. 1,523,249, issued January 13, 1925, for a tractor with trailer having tipping body. This patent was cited by the Patent Office during the prosecution of the Walter application. Although it was urged that the ball and socket feature are the full equivalent of the fifth wheel combination, nevertheless the Examiner passed the application on the applicant's argument that Blum shows no fifth wheel connection "by which a horizontal bearing surface is afforded for the front end of the trailer and no universal connection between any such fifth wheel element and the hoist. If his construction is construed as including a universal connection between the trailer and tractor then the fifth wheel element is not present, and vice versa."

Blum apparently had in mind precisely the objects of the Walter patent, for he stated: "My invention relates to a tractor combined with a trailer having a rear-tipping body, and employing an automatic coupling, whereby all the operations may be performed in a very simple manner and with great rapidity. In this arrangement the tractor itself is provided with the tipping mechanism, so that it is not required to employ the same upon each trailer. Numerous systems of hoisting adapted for tipping purposes as well as systems of automatic coupling are already known, and these may be suitably combined in order to obtain the desired result."

Blum certainly shows a tipping mechanism arranged on the tractor, as Walter designed.

But, however much Blum shows, it must be conceded that Blum does not show a fifth wheel universally mounted on the dumping mechanism, and thus fails to meet the Walter claims.

Coming now to the question of infringement:

Claim 2 may be divided into the following constituent elements:

(a) A tractor and semitrailer.

(b) Dumping mechanism mounted wholly on the tractor.

(c) A fifth wheel connection between the tractor and semitrailer.

(d) One element of the fifth wheel carried on the tractor and connected with the dumping mechanism.

(e) The co-operating element of the fifth wheel carried on the trailer.

(f) Means between the fifth wheel connection and the dumping mechanism affording capacity for universal movement of the fifth wheel during dumping.

It is admitted, of course, that the Borden construction employs a tractor and semitrailer. It is contended, however, that the Borden construction, for which the defendant is responsible, does not employ a dumping mechanism of any kind, and that it is incapable of effecting a dumping operation. The defendant argues that it employs a hoisting mechanism adapted only for raising the semitrailer a slight distance upwardly, sufficient to disconnect the semitrailer from the tractor, and thus to enable the pivoted prop to swing down to support the trailer body. It is claimed that the hoist could not possibly raise the forward end of the semitrailer to such a height as to incline the trailer body sufficiently to dump a load. Yet the record shows that the hoisting device installed on the Borden trailer gave a tilt with a 16⅛-inch stroke of approximately 10 degrees. It seems to me to be self-evident that, when the forward part of the trailer is thus raised and the rear inclosure or gate of the trailer opened, the contents of the trailer will be dumped more or less effectively and quickly, depending upon the nature of the contents.

I think the conclusion is irresistible that the term "dumping mechanism," as used in the patent referring to the mechanism which is mounted on the trailer, means a mechanism employed to hoist the forward end of the trailer so that the load in the trailer may be dumped. The Borden construction undoubtedly embodies such a mechanism.

The defendant is equally unconvincing in arguing that "a fifth wheel connection between the tractor and semi-trailer, one element of which is carried on the trailer and connected with the dumping mechanism," is absent from the Borden construction. The transverse bolster is certainly the equivalent of the lower fifth wheel member of the Walter patent, and is connected with the hydraulic hoist, which is the dumping mechanism of the patent. So, of course, the Borden construction also has a co-operating fifth wheel element carried on the trailer.

It is forcibly urged that the element of the claim, "means between the fifth wheel connection and the dumping mechanism affording capacity for universal movement of the fifth wheel during dumping," is not present in the Borden construction. It is said that there is no universal movement between the hoist and the fifth wheel, for the reason that the fifth wheel member, when in engagement with the trailer, can rock only laterally by reciprocation of the piston rods of the hoists.

In effect, the argument of the defendant is that, if it is maintained that a universal movement is present in Borden, it would have to include the hoists, and that this would result in claiming the element twice—first, as a hoist or dumping mechanism; and, secondly, as a part of the universal joint. In answer, I think it appears that the connection between the hoisting mechanism and the fifth wheel is such as to permit the latter to maintain its alignment with the semitrailer when elevated. It moreover appears that, if the trailer in the Borden construction were at an angle to the tractor because of the loose connection between the hoist and the lower fifth wheel member, that member would be free to rock on its own longitudinal axis, and, being free to move also on an axis at right angles thereto, would conform to the inclination of the trailer.

It seems to me that deliberate provision was made in the Borden construction for uncontrolled movement of the lower member of the fifth wheel with respect to the hoist, at least within the range required for self-alignment of that member with the trailer in the hoisting process. Thus the connection does not, as the defendant argues, permit lateral inclination of the trailer body only through action of the piston rods of the hoisting mechanism, but rather because of the character of the connection between the hoisting mechanism and the lower fifth wheel member.

Thus claim 2 is infringed in terms and in substance.

Claim 3 differs, perhaps, from claim 2, adding as an element only "means on the tractor for engaging the fifth wheel and holding it against universal movement when in lowered position." This element refers to the saddle pieces $t^1$, $t^2$. These saddles are found in the Borden construction, so that claim 3 is also infringed.

It may be said in conclusion that the equities are very much with the plaintiff in this cause. The inventor effected his original installations in carrying out his conception by adopting the Heil hoist, and had conferences and communications with the company in that regard. Subsequently, when the Borden construction was under consideration, it seemed that everything that Walter had communicated to the defendant was availed of by the defendant.

That the defendant placed in the same category the Borden installation and that of the Walter tractor would seem to be indicated in the article published in the Heil News of April, 1928. In other words, Heil apparently learned directly from Walter the advantages to be gained by equipping the tractor with the hoisting mechanism, and that the load on the trailer could be thus elevated in direct line with the load itself at all angles of the dumping operation. This, of course, of itself could not spell infringement, but does indicate an obvious desire by the defendant to profit from the ingenuity of the plaintiff.

The plaintiff may have a decree in the usual form.